1
2
3
4
5
6
7
8
9          **IN THE UNITED STATES DISTRICT COURT**
10         **FOR THE EASTERN DISTRICT OF CALIFORNIA**
11
12
CHARLOTTE SURVINE, et al.,                  CASE NO. CV F 12-1453 LJO JLT
13
               Plaintiffs,                  **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
14                                          **MOTION TO DISMISS**
        vs.                                 (Doc. 10.)
15
OFFICER M.A. COTTLE, et al.,
16
               Defendants.
17
                                      /
18
19                              __INTRODUCTION__
20         Defendants City of Bakersfield ("City") and two City police officers seek to dismiss as barred
21  by limitations periods and insufficient supporting facts plaintiffs'[1] civil rights claims arising from alleged
22  fabrication of a traffic collision report.  Plaintiffs respond that their operative First Amended Complaint
23  ("FAC") adequately pleads timely claims.   This Court considered defendants' F.R.Civ.P. 12(b)(6)
24  motion to dismiss on the record and VACATES the January 14, 2012 hearing, pursuant to Local Rule
25  230(g).  For the reasons discussed below, this Court  DISMISSES the FAC's claims with limited leave
26  to amend.
27  _____

28          [1]      Plaintiffs are Alisande Cherise Survine ("Ms. Survine"), her mother Charlotte Survine ("Charlotte") and
Ms. Survine's son Sean Millet ("Mr. Millet") and will be referred to collectively as "plaintiffs."

# BACKGROUND[2]

## Summary

On November 17, 2003, Ms. Survine, who is African-American, was struck by a vehicle driven by Sarah Sanders ("driver"),who is Caucasian, as Ms. Survine began to cross a City street intersection ("incident").  Defendant City police officers Michael Cottle ("Officer Cottle") and David Cox ("Officer Cox") investigated the incident and prepared a traffic collision report ("report"), which plaintiffs claim was fabricated to exonerate the Caucasian driver pursuant to a conspiracy among Officers Cottle and Cox and others to deny civil rights of African-American citizens, such as plaintiffs.  The City and Officers Cottle and Cox (collectively "defendants") seek to dismiss plaintiffs' civil rights and fraud claims as insufficiently pled and barred by defenses.

## The Incident And Report

As a result of the incident, Ms. Survine suffered severe injuries and was rendered comatose up to the September 5, 2012 filing of plaintiffs' original complaint ("original complaint").[3]  The report stated that Ms. Survine ran directly in front of the driver's vehicle and that the driver braked and attempted to avoid hitting Ms. Survine.  The driver testified under oath differently and that the driver first saw Ms. Survine almost simultaneously with impact of Ms. Survine and did not remove her foot from the accelerator to decelerate.  Physical evidence at the incident scene, including skid marks, denies statements which the report attributes to the driver and makes the version of events concocted by Officers Cottle and Cox and the City Police Department (" Department") "an impossibility."  A witness statement places Ms. Survine on the sidewalk before she attempted to cross the street to render impossible that Ms. Survine stood on a raised cement divider, which the report attributes the driver to have noticed.

## Plaintiffs' Claims

The FAC alleges that the report portrays the driver as driving safely and taking precautions and

---

[2]     The factual recitation is derived generally from the FAC, the target of defendants' challenges, and other matters which this Court may consider.

[3]     Plaintiffs' verifications attached to the original complaint are dated August 22, 2006.  Plaintiffs' counsel declares that the verifications were signed on August 22, 2012 and include 2006 as a typographical error.

that Officers Cottle and Cox and others in the Department "conspired to fabricate the Report to cast Ms. Survine as having been the sole and only cause of her harm." The FAC accuses defendants of violating plaintiffs' equal protection and due process rights to diminish and devalue "claims that Plaintiffs would pursue against the Driver," to obstruct justice, and to "prevent any prosecution of the Driver."

The FAC alleges:

1.     A (first) 42 U.S.C. § 1983 ("section 1983") claim that defendants violated plaintiffs' equal protection and procedural and substantive due process rights;

2.     A (second) section 1983 conspiracy claim that Officers Cottle and Cox conspired to violate plaintiffs' rights and the "wrongful conduct of Cottle, Cox, others in the Department and of their superiors in the Department could not have occurred without the participation or deliberate indifference and/or the willful blindness of each of them";

3.     A (third) 42 U.S.C. § 1985 ("section 1985") claim that Officers Cottle and Cox conspired to obstruct justice and presented "untrue facts and circumstances" in the report;

4.     A (fourth) California Constitution violation claim that "Defendants are liable to Plaintiffs pursuant to Article I, Section 7 of the Constitution of the State of California for the violation of their right [to] equal protection of the laws"; and

5.     A (fifth) fraud and intentional misrepresentation claim that Officers Cottle and Cox knowingly "made false statements in the Report and filed the Report as the official record of the Incident," "knew that Plaintiffs would rely on the Report as a true and factual record," and that plaintiffs were damaged "because the factual basis for their claims were skewed in favor of the Driver."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

Defendants seek dismissal of plaintiffs' claims as inadequately pled and barred by several defenses.

"When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9ᵗʰ Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9ᵗʰ Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7ᵗʰ Cir. 1995). A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9ᵗʰ Cir. 2001).

In addressing dismissal, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9ᵗʰ Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9ᵗʰ Cir.1986), and must  not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9ᵗʰ Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7ᵗʰ Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, "a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984).  For instance, a limitations defense may be raised by a F.R.Civ.P. 12(b)(6) motion to dismiss. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *see Avco Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982), *cert. denied*, 459 U.S. 1037, 103 S.Ct. 450 (1982). A F.R.Civ.P. 12(b)(6) motion to dismiss may raise the limitations defense when the statute's running is apparent on the complaint's face. *Jablon*, 614 F.2d at 682.  If the limitations defense does not appear

5

on the complaint's face and the trial court accepts matters outside the pleadings' scope, the defense may be raised by a motion to dismiss accompanied by affidavits. *Jablon*, 614 F.2d at 682; *Rauch v. Day and Night Mfg. Corp.*, 576 F.2d 697 (6th Cir. 1978).

With these standards in mind, this Court turns to defendants' challenges to the FAC.

### Limitations Defense – Sections 1983 And 1985

Defendants contend that the FAC's section 1983 and 1985 claims are time barred given that the incident occurred on November 17, 2003 and plaintiffs delayed to obtain the report and delayed to September 5, 2012 to file their original complaint.

### *Two-Year Limitations Period*

Federal civil rights statutes have no independent limitations period. *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 711 (9th Cir. 1993) (California's statute of limitations for personal injury actions governs claims brought pursuant to 42 U.S.C. §§ 1981, 1983, and 1985)*; McDougal v. County of Imperial*, 942 F.2d 668, 673-674 (9th Cir. 1991) ("suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983"); *Abreu v. Ramirez*, 284 F.Supp.2d 1250, 1257 (C.D. Cal. 2003). The applicable limitations period is determined by borrowing the forum state's limitations period for personal injuries. *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257. Section 1983 and related federal civil rights claims "are best characterized as personal injury actions." *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S.Ct. 1938 (1985).

On January 1, 2003, California Code of Civil Procedure section 335.1 ("section 335.1")[4] took effect to extend the prior limitations period for personal injury actions (and correspondingly to federal civil rights claims, *see Wilson*, 471 U.S. at 271-272, 105 S.Ct. 1938; *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716 (1975); *Krug v. Imbrodino*, 896 F.2d 395, 396-397 (9th Cir. 1990)), from one year under former California Code of Civil Procedure section 340(3) to two years. *Abreu*, 284 F.Supp.2d at 1255; *see* Cal. Senate Bill 688 (Burton), Stats. 2002, ch. 448, §3. Applying California law, federal civil rights claims which arise in California are generally barred if not brought

---

[4]     Section 335.1 provides: "Within two years: An action for assault, battery, or injury to, or for the death of, an individual caused by the wrongful act or neglect of another."

within two years if they accrued after January 1, 2003.  *See Johnson*, 421 U.S. 454, 95 S.Ct. 1716; *Elliot v. City of Union City*, 25 F.3d 800, 802 (9th Cir. 1994); *Krug*, 896 F.2d at 396-397; *see also Taylor*, 993 F.2d at 711.

Federal law "determines when a federal cause of action accrues, despite the fact that state law determines the relevant statute of limitations." *Wetzel v. Lou Ehlers Cadillac Group*, 189 F.3d 1160, 1163 (9th Cir. 1999); *Elliott*, 25 F.3d at 801-802.  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Tworivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996).  "Generally, the statute of limitations begins to run when a potential plaintiff knows or has reason to know of the asserted injury." *De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991).

Just as state law determines the applicable limitations period, state law also determines the applicability of tolling doctrines in civil rights actions when it is not inconsistent with federal law. *Hardin v. Straub*, 490 U.S. 536, 109 S.Ct. 1998 (1989); *Johnson*, 207 F.3d at 653; *Abreu*, 284 F.Supp.2d at 1257.

Defendants argue that the FAC's section 1983 and 1985 claims are time barred in that the events to support them occurred nearly nine years prior to September 5, 2012 filing of plaintiff's original complaint.  Defendants note that the report was prepared on November 17, 2003, approved on December 18, 2003, and "was available to the plaintiffs."  Defendants point to an absence of factual support for delayed discovery in that "plaintiffs knew or should have known several years ago of the injury that serves the basis for this action."  Defendants further point to plaintiffs' August 22, 2006 verifications attached to their original complaint to "confirm the plaintiffs knew of the facts giving rise to this lawsuit in 2006."  Defendants explain that an underlying action against the driver concluded in January 2006 to apprise plaintiffs "of the facts involved in that lawsuit."

Plaintiffs respond that Ms. Survine and Mr. Millet are entitled to tolling under California Code of Civil Procedure section 352(a) ("section 352(a)"), which tolls limitations periods for disability and minority.  Plaintiffs point to FAC allegations that Ms. Survine was comatose up to the September 5, 2012 filing of the original complaint and that Mr. Millet reached the age of majority in April 2011 to render him 10 years of age at the time of the incident.

1    Based on the FAC, Ms. Survine and Mr. Millet are entitled to section 352(a) tolling for disability

2  and minority respectively.   However, plaintiffs fail to address tolling for Charlotte, and this Court

3  presumes that as to Charlotte, plaintiffs rely on delayed discovery of alleged claims.

4                                      ***Delayed Discovery***

5    To rely on delayed discovery of a claim, "[a] plaintiff whose complaint shows on its face that his

6  claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1)

7  the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable

8  diligence."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 808, 27 Cal.Rptr.3d 661 (2005).  "[T]o

9  adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite

10 diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered

11 facts supporting the cause of action within the applicable statute of limitations period."  *Fox*, 35 Cal.4th

12 at 809, 27 Cal.Rptr.2d 661.

13   To support delayed discovery, the FAC alleges that during July 2012, Mr. Millet and Charlotte

14 informed their attorneys in civil actions against the driver that they had discovered "wrongdoing and

15 malfeasance" and "the facts and circumstances which formed the basis of the claims" in the FAC.  The

16 FAC further alleges that after "months of  contentious communications including up to September

17 2012," Mr. Millet and Charlotte "gained access to a number of files concerning these civil cases against

18 the Driver from their counsel" and discovered that "files and records were missing."  The FAC alleges

19 that plaintiffs "complained to their former counsel to no avail and resorted to the Los Angeles Superior

20 Court archives to retrieve records and files."

21   The FAC's delayed discovery allegations raise inferences that plaintiffs' counsel in civil actions

22 against the driver concealed information to support the FAC's claims.  The allegations reference filings

23 as early as July 2009.  The FAC's cursory allegations fail to demonstrate the time and manner of

24 plaintiffs' discovery of facts to support the FAC.  More damaging to Charlotte is the lack of allegations

25 of reasonable diligence, especially given the passage of time from the incident to litigation with the

26 driver to the September 5, 2012 filing of plaintiffs' original complaint.  The FAC merely references

27 "months of contentious communication" with no allegations to support diligence to support section 1983

28 and section 1985 claims, which on the basis of the FAC are time barred as to Charlotte.  Other than

section 352(a) tolling, plaintiffs offer no resistance to the two-year limitations defense.  Since the FAC lacks facts that Charlotte is entitled to section 352(a) tolling, the FAC's section 1983 and 1985 claims are time barred as to her to warrant their dismissal with prejudice as to her.

**Limitations Defense – Fraud**

Defendants challenge the FAC's fraud claim as barred by the three-year limitations period of California Code of Civil Procedure section 338(d) ("action for relief on the ground of fraud") in that the events supporting fraud arose more than three years prior to the original complaint's September 5, 2012 filing.

Plaintiffs rely on section 352(a) tolling for Ms. Survine and Mr. Millet but offer no defense to the running of the three-year limitations period as to Charlotte.  For the same reasons discussed above regarding the section 1983 and 1985 claims, the FAC's fraud claim is fatally time barred as to Charlotte but survives for Ms. Survine and Mr. Millet based on section 352(a) tolling.

**California Constitutional Claim**

The FAC's (fourth) California Constitution violation claim alleges that "Defendants are liable to Plaintiffs pursuant to Article I, Section 7 of the Constitution of the State of California for violation of their right [to] equal protection of the laws."  Defendants challenge plaintiffs' ability to pursue a "direct claim for damages" under Article I, Section 7 of the California Constitution.  Plaintiffs respond that their suffered an Article I, section 7(a) violation stemming "from a highly-protected right prohibiting discrimination based on race."

Article I, section 7(a) provides that a "person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws . . ."  In *Katzberg v. Regents of the University of California*, 29 Cal.4th 300, 303, 127 Cal.Rptr.2d 482 (2000), the California Supreme Court concluded that a claim for damages is unavailable under that section of the California Constitution. There is no "constitutional tort cause of action for damages to remedy an asserted violation of the due process 'liberty' interest under article I, section 7(a)." *Katzberg*, 29 Cal.4th at 326, 127 Cal.Rptr.2d 482; *see City of Simi Valley v. Superior Court*, 111 Cal.App.4th 1077, 1084, 4 Cal.Rptr.3d 468 (2003) ("a plaintiff may not sue for damages based on a violation of article I section 7 of the California Constitution"); *see Javor v. Taggart,* 98 Cal.App.4th 795, 807, 120 Cal.Rptr.2d 174 (2002) (no damages

1   for violation of due process or equal protection clause of the California Constitution).

2       The authorities are clear that plaintiffs may not pursue a damages claim under Article I, section

3   7(a).  Plaintiffs' attempt to distinguish *Katzberg* is unavailing as is there reference to *Gay Law Students*

4   *Assn. v. Pacific Tel. & Tel. Co.,* 24 Cal.3d 458,156 Cal.Rptr. 14 (1979).  *See Katzberg*, 29 Cal.4th at 312,

5   127 Cal.Rptr.2d 482 ("given the circumstance . . . in *Gay Law Students*, we did not explicitly address

6   the question of damages").  Morever, even in the absence of a cognizable damages claim, the FAC lacks

7   facts to support a due process deprivation to warrant further dismissal with prejudice of the FAC's fourth

8   claim.

9                          **Claims Act Compliance**

10      Defendants contend that the FAC's (fifth) fraud claim is barred by the FAC's failure to plead

11  compliance with the California Government Claims Act ("Claims Act"), Cal. Gov. Code, §§ 810, et seq.

12  Plaintiffs respond that the fraud claim is subject to 28 U.S.C. § 1367(a) supplemental jurisdiction to

13  avoid Claims Act requirements.

14      The Claims Act describes the specific steps which must be taken before a civil action for money

15  or damages may be brought against a public entity.  *Addison v. State of California*, 21 Cal.3d 313, 316,

16  146 Cal.Rptr. 224 (1978).  The Claims Act requires timely filing of a proper claim as condition

17  precedent to maintenance of an action.  Cal. Gov. Code, §§ 905, 911.2, 945.4 (presentment of a written

18  claim to the applicable public entity is required before a "suit for money or damages may be brought

19  against a public entity"); *County of San Luis Obispo v. Ranchita Cattle Co.*, 16 Cal.App.3d 383, 390,

20  94 Cal.Rptr. 73 (1971).  California Government Code section 911.2(a) provides: "A claim relating to

21  a cause of action for death or for injury to person . . . shall be presented . . . not later than six months

22  after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented

23  . . . not later than one year after the accrual of the cause of action."

24      The claims procedures applicable to actions against public entities are the same for actions

25  against public employees.  Cal. Gov. Code, §§ 950-950.6.  A "government claim must be filed with the

26  public entity before a tort action is brought against the public entity or public employee."  *Watson v.*

27  *State of California,* 21 Cal.App.4th 836, 844, 26 Cal.Rptr.2d 262 (1993) (1993) (citing Cal. Gov. Code,

28  § 950.2).

Compliance with the claims statutes is mandatory. *Farrell v. County of Placer*, 23 Cal.2d 624, 630, 145 P.2d 570 (1944). Failure to file a claim is fatal to the cause of action. *Johnson v. City of Oakland*, 188 Cal.App.2d 181, 183, 10 Cal.Rptr. 409 (1961). "Failure to allege facts in a complaint demonstrating or excusing compliance with prelitigation governmental claims presentation requirements of the Tort Claims Act subjects the complaint to a motion to dismiss for failure to state a cause of action." *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma,* 644 F.Supp.2d 1177, 1205 (2004). A "plaintiff must allege facts demonstrating or excusing compliance with the claim presentation requirement." *State v. Superior Court*, 32 Cal.4th at 1243, 13 Cal.Rptr.3d at 534. "Accordingly, submission of a claim within [six months] is a condition precedent to a tort action against either the employee or the public entity." *Williams v. Horvath*, 16 Cal.3d 834, 838,129 Cal.Rptr. 453 (1976).

"[N]o suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented . . . until a written claim therefor has been presented to the public entity and has been acted upon . . . or has been deemed to have been rejected." Cal. Gov. Code, § 945.4. The Claims Act is designed to protect governmental agencies from stale and fraudulent claims, to provide an opportunity for timely investigation, and to encourage settling meritorious claims. *Johnson v. San Diego Unified School Dist.*, 217 Cal.App.3d 692, 697, 266 Cal.Rptr. 187 (1990). The "claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." *Shelton v. Superior Court*, 56 Cal.App.3d 66, 82, 128 Cal.Rptr. 454 (1976). Since the claims statutes should not be used as traps for the unwary when their underlying purposes have been satisfied, courts employ a test of substantial compliance, rather than strict compliance, in determining whether the plaintiff has met the filing requirements of the Claims Act. *Johnson*, 217 Cal.App.3d at 697, 266 Cal.Rptr. 187. Nonetheless, the substantial compliance doctrine "cannot cure total omission of an essential element from the claim or remedy a plaintiff's failure to comply meaningfully with the statute." *Loehr v. Ventura County Community College Dist.,* 147 Cal.App.3d 1071, 1083, 195 Cal.Rptr. 576 (1983).

Defendants note the FAC's absence of allegations of an attempt to comply with the Claims Act, to file a late claim, or to seek relief from Claims Act requirements despite plaintiffs' knowledge of facts

well more than six months prior to the original complaint's September 5, 2012 filing.  Defendants point out that under California Government Code section 950.2, claims against public employee are barred if an action against the employing public employer is barred for failure to satisfy the Claims Act.

Failure to satisfy the Claims Act bars the fraud claim.  Plaintiffs' points as to supplemental jurisdiction are nonsense in that federal courts recognize the need to satisfy the Claims Act and failure to do so would defeat Claims Act purposes.  There is no authority that a plaintiff may assert supplemental jurisdiction to avoid Claims Act requirements to revive a barred claim.  The fraud claim is subject to dismissal with prejudice as to all plaintiffs.

### Adequacy Of Pleading Section 1983 And 1985 Claims

Defendants argue that, putting aside the limitations defense, the FAC's section 1983 and 1985 claims are insufficiently pled to warrant their dismissal.

### *Section 1983 Requirements*

"Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States."  *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)). Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution."  *Carey v. Piphus*, 435 U.S. 247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996 (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

1    Defendants attack the FAC's (first) section 1983 conspiracy claim's failure to identify allegedly

2    violated rights given the claim's scant allegation that defendants violated plaintiffs' equal protection and

3    procedural and substantive due process rights.  Defendants argue that the FAC lacks facts to support

4    legal conclusions that defendants are subject to section 1983 liability.

5    "Under Rule 8(a), a complaint must do more than name laws that may have been violated by the

6    defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept.*

7    *of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

8    As to violation of protected rights, the FAC alleges that because Ms. Survine is African-

9    American and the driver Caucasian, Officers Cottle and Cox and their superiors fabricated the report as

10   the official record of the incident to violate plaintiffs' "rights to equal protection," "rights to due

11   process," and "applicable ordinances, laws and statutes relating to filing false and fraudulent reports."

12   The FAC further alleges that the fabricated report "diminished any claims that Plaintiffs would pursue

13   against the Driver" and "was unlawful and an obstruction of justice" to thwart investigation of the

14   incident.

15   The FAC makes broad allegations to support the (first) section 1983 claim.  To summarize, the

16   FAC alleges that based on Ms. Survine's and the driver's races, defendants falsified the report to thwart

17   plaintiffs' civil claims against the driver and to violate equal protection and due process rights.  Despite

18   its labels, the FAC fails to identify specific constitutional rights allegedly infringed.  The FAC fails to

19   connect alleged report fabrication to violation of protected rights.  The FAC is short on necessary details

20   to support the (first) section 1983 claim.  Nonetheless, this Court will grant Ms. Survine and Mr. Millet

21   an attempt to amend the claim.

22                                   ***Section 1983 Conspiracy***

23   Defendants challenge that the FAC's (second) section 1983 conspiracy claim as lacking sufficient

24   facts.

25   A section 1983 civil rights conspiracy is a combination of two or more persons acting in concert

26   to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which

27   is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act

28   that results in damages. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988).  "Section 1983 is based upon

13

the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color of state law." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  "A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988).   However, to be liable, "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989).

### *Section 1985 Conspiracy*

Defendants further attack the FAC's (third) section 1985 conspiracy claim as conclusory.

Section 1985(2) identifies a conspiracy to interfere with civil rights:

> . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the **equal protection of the laws**, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the **equal protection of the laws**;  (Bold added.)

The "equal protection" language of the second clause (state courts) of section 1985(2) requires "an allegation of class-based animus for the statement of a claim under that clause." *Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th Cir.1985)).  "Congress intended the act [section 1985(2)] to apply only in cases where there was racial or class-based animus." *Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 347 (5th Cir.), *cert. denied*, 454 U.S. 1110, 102 S.Ct. 687 (1981); *see Lopez v. Arrowhead Ranches*, 523 F.2d 924, 928 (9th Cir. 1975) (limitation to "cases in which a deprivation of equal rights is actionable to those where the injury is class motivated").

"To state a cause of action under § 1985(3)[5], a complaint must allege (1) a conspiracy, (2) to

---

[5]    Section 1985(3) provides:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case

deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980). "To bring a cause of action successfully under § 1985(3), a plaintiff must demonstrate a deprivation of a right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1056 (9th Cir. 2002) (internal quotations omitted).

Congress did not intend to create a general federal tort law by the passage of section 1985(3). *Western Telecasters, Inc. v. California Federation of Labor, AFL-CIO*, 415 F.Supp. 30, 33 (S.D. Cal. 1976.) "[T]o effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus." *Western Telecasters*, 415 F.Supp. at 33 (section 1985(3) should not be interpreted to encompass all discrimination between classes of persons, and a claim of discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under section 1985(3)).

A section 1985 claim "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi*, 839 F.2d at 626. "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'" *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)).

A section 1985(3) claim "must set forth facts showing some intentional and purposeful deprivation of constitutional rights." *See Powell v. Workmen's Compensation Bd. of State of N. Y.*, 327 F.2d 131, 137 (2nd Cir. 1964). A section 1985(3) plaintiff is "bound to do more than merely state vague and conclusory allegations respecting the existence of a conspiracy. It was incumbent upon him to allege with at least some degree of particularity overt acts which defendants engaged in which were

---

of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

reasonably related to the promotion of the claimed conspiracy." *Powell*, 327 F.2d at 137; *see Grigsby v. Kane*, 250 F.Supp.2d 453, 458 (M.D. Pa. 2003). "[O]nly allegations which are particularized, such as those addressing the period of the conspiracy, the object of the conspiracy, and actions taken in furtherance of the conspiracy, will be deemed sufficient." *Grigsby*, 250 F.Supp.2d at 458. A conspiracy occurs only when the parties have reached "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *American Tobacco Co. v. United States*, 328 U.S. 781, 809-10, 66 S.Ct. 1125, 1138 (1946).

To support a conspiracy, the FAC alleges:

1.   "Cottle and Cox, acting in concert with instruction and approval from superiors within the Department and in keeping with the practice of indifference shown to black citizens and other minorities by the City and the Council, painstakingly conspired to construct a fictitious and made-up version of the Incident, perjuring themselves by filing an intentionally fabricated, false and untruthful Traffic Collision";

2.   "Personnel in superior positions in the Department . . . conspired together to ensure that the Report was carefully crafted and constructed, with a direct and specific intent to absolve and exonerate the Driver and to cast all blame and causation for the Incident totally and one hundred percent on Ms. Survine, solely because Ms. Survine is black and the Driver is white";

3.   Officers Cottle and Cox and their superiors acted in concert "to shield the Driver from investigation, including sobriety tests, and likely prosecution and punishment for her conduct"; and

4.   Officers Cottle and Cox and their superiors acted in concert by filing the report and "acted with certainty and specific intent to hide, conceal and cover up the true facts involved in the Incident."

Defendants fault the FAC's absence of facts of a conspiracy or racial bias given that the FAC's mere reference of plaintiffs as African-American citizens. Defendants note the FAC's failure "to identify conspiracy members and to explain how civil rights were deprived through a conspiracy motivated by racial or other class-based animus."

16

Plaintiffs respond that the FAC's allegations sufficiently allege a conspiracy, especially considering allegations that the report contradicts the driver's sworn testimony.

Despite their repetition, the gist of the FAC's conspiracy claims is that Officers Cottle and Cox and their superiors falsified the report to protect the Caucasian driver and to harm Ms. Survine, who is African-American. The FAC fails to identify concerted activity to result in violation of a protected right. The FAC lacks insufficient specific facts of a conspiracy. It merely uses labels of "conspiracy" and "acted in concert" with no supporting facts. Plaintiffs' premise is that since the FAC alleges differences between the report and the driver's sworn testimony, there is a conspiracy given the different races of Ms. Survine and the driver.

The FAC lacks facts to support a common design or meeting of minds for an unlawful arrangement. There are no particularized allegations as to the alleged conspiracy's timing, duration, or object other than facts to the effect that Officers Cottle and Cox prepared the report. The FAC relies on merely identifying conspirators as Officers Cottle and Cox as well as "others in the Department and their supervisors." Such allegations are insufficient to support the alleged conspiracy. The FAC offers no facts that the conspirators were motivated by a class-based discriminatory animus in that the FAC relies solely on the races of Ms. Survine and the driver and purported favoring of Caucasian drivers. The section 1983 and 1985 conspiracy claims fail in the absence of necessary supporting facts. Nonetheless, out of an abundance of caution, this Court grants Ms. Survine and Mr. Millet an opportunity to attempt to cure the section 1983 and 1985 conspiracy claims.

**Fraud**

Defendants challenge the (fifth) fraud claim's failure to satisfy F.R.Civ.P. (b)'s heightened pleading standard given the fraud claim's conclusory allegation that defendants "knowingly and with intent to mislead and deceive made false statements in the Report and filed the Report as the official record of the Incident." Plaintiffs respond that the FAC's fraud allegations "are more than conclusory statements and meet the heightened pleading standards."

***Fraud Elements***

The elements of a California fraud claim are: (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of the falsity (or "scienter"); (3) intent to defraud, i.e.,

17

to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377 (1996). The same elements comprise a cause of action for negligent misrepresentation, except there is no requirement of intent to induce reliance. *Caldo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519, 23 Cal.Rtpr.3d 1 (2004).

"[T]o establish a cause of action for fraud a plaintiff must plead and prove in full, factually and specifically, all of the elements of the cause of action." *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156, 53 Cal.Rptr.2d 336 (1996). There must be a showing "that the defendant thereby intended to induce the plaintiff to act to his detriment in reliance upon the false representation" and "that the plaintiff actually and justifiably relied upon the defendant's misrepresentation in acting to his detriment." *Conrad*, 45 Cal.App.4th at 157, 53 Cal.Rptr.2d 336. "The absence of any one of these required elements will preclude recovery." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332, 231 Cal.Rptr. 355 (1986).

### *Particularity Pleading Standard*

F.R.Civ.P. 9(b) requires a party to "state with particularity the circumstances constituting fraud."[6] In the Ninth Circuit, "claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements." *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements. *Vess*, 317 F.3d at 1107.[7] A motion to dismiss a claim "grounded in fraud" under F.R.Civ.P. 9(b) for failure to plead with particularity is the "functional equivalent" of a F.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d at 1107. As a counter-balance, F.R.Civ.P. 8(a)(2) requires from a pleading "a short and plain statement of the claim showing that the pleader is entitled to relief."

---

[6]     F.R.Civ.P. 9(b)'s particularity requirement applies to state law causes of action: "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the *circumstances* of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 443 (1st Cir. 1995)(italics in original)).

[7]     "In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess*, 317 F.3d at 1103-1104.

F.R.Civ.P. 9(b)'s heightened pleading standard "is not an invitation to disregard Rule 8's requirement of simplicity, directness, and clarity" and "has among its purposes the avoidance of unnecessary discovery." *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996). F.R.Civ.P 9(b) requires "specific" allegations of fraud "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Neubronner v. Milken*, 6 F.3d 666, 671-672 (9th Cir. 1993) (internal quotations omitted; citing *Gottreich v. San Francisco Investment Corp.*, 552 F.2d 866, 866 (9th Cir. 1997)). The Ninth Circuit has explained:

> Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud. The time, place and content of an alleged misrepresentation may identify the statement or the omission complained of, but these circumstances do not "constitute" fraud. The statement in question must be false to be fraudulent. Accordingly, our cases have consistently required that circumstances indicating falseness be set forth. . . . [W]e [have] observed that plaintiff must include statements regarding the time, place, and *nature* of the alleged fraudulent activities, and that "mere conclusory allegations of fraud are insufficient." . . . The plaintiff must set forth what is false or misleading about a statement, and why it is false. In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading. . . .
>
> In certain cases, to be sure, the requisite particularity might be supplied with great simplicity.

*In Re Glenfed, Inc. Securities Litigation*, 42 F.3d 1541, 1547-1548 (9th Cir. 1994) (en banc) (italics in original) *superseded by statute on other grounds as stated in Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297 (C.D. Cal. 1996); *see Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (fraud allegations must be accompanied by "the who, what, when, where, and how" of the misconduct charged); *see Neubronner*, 6 F.3d at 672 ("The complaint must specify facts as the times, dates, places, benefits received and other details of the alleged fraudulent activity."); *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (1986) ("the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation").

F.R.Civ.P. 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform

each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-765 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co*., 995 F.Supp. 1437, 1439 (M.D. Fla.1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir.1989). "To state a claim of fraudulent conduct, which carries substantial reputational costs, plaintiffs must provide each and every defendant with enough information to enable them 'to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with.'" *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F.Supp.2d 1158, 1163 (C.D. Cal. 1998) (quoting *In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1433 (N.D. Cal.1988)).

To support the fraud claim, plaintiffs rely on fraudulent representations "directly from the traffic collision report" which contradicts the driver's sworn testimony.  Plaintiffs attribute fraudulent statements to Officers Cottle and Cox and others in the Department and which "were made at or about the time of the alleged collision."

The FAC makes passing references to "a fictitious and made-up version of the Incident," an "intentionally fabricated, false and untruthful Traffic Collision Report," and "false statements in the Report." The FAC alleges that Officers Cottle and Cox, "by filing the Report, acted with certainty and specific intent to hide, conceal and cover up the true facts involved in the Incident."  The FAC further alleges that the report "did not present a true picture of the Driver's conduct or the conditions and circumstances involved in the Incident."

The FAC rests on report statements and claims the statements are false based on the driver's sworn testimony.  The FAC's cryptic, although repetitive, allegations fail to satisfy fraud elements and to identify sufficiently requisite specific statements, who made statements, authority to make statements, and when statements were made.  The FAC's conclusory allegations fail to meet Rule 9(b)'s strict standard.  The FAC lacks facts as to how defendants intended to induce plaintiffs' reliance and how they justifiably relied on the report, which does not constitute direct representations to plaintiffs.  Plaintiff offer no authority that a member of the public is entitled to rely on a traffic collision report to support a fraud claim.

20

1   The FAC lacks facts to support fraud elements let alone the who, what, when, when and how of

2   alleged misconduct and the heightened federal pleading standard.  The FAC relies on mere notions that

3   the report hampered plaintiffs' claims against the driver.  The FAC's incomplete allegations are

4   insufficient to warrant dismissal of the FAC's claims sounding in fraud.  Nothing suggests that plaintiffs

5   are able to cure the fraud claim, and in particular the reliance elements, with allegation of further facts.

6   As such, there are further grounds to dismiss with prejudice the fraud claim.

7   **Standing**

8   Defendants contend that Charlotte and Mr. Millet lack standing to sue for violation of Ms.

9   Survive's rights in that Charlotte and Mr. Miller "were not involved in the underlying accident or the

10   subject of the subject police report."  Plaintiffs respond that Charlotte and Mr. Millet have standing

11   based on injury to their due process and equal protection rights because "the fraudulent traffic collision

12   report significantly reduced the valuation of their claims against the driver and her insurer."

13   In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136, 2137 (1992),

14   the U.S. Supreme Court explained:

15   [T]he irreducible constitutional minimum of standing contains three elements. First, the
16   plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest
     that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or
     hypothetical. Second, there must be a causal connection between the injury and the
17   conduct complained of. . . . Third, it must be likely, as opposed to merely speculative,
     that the injury will be redressed by a favorable decision." (footnote, citations, and internal
18   quotation marks omitted).

19   "This triad of injury in fact, causation, and redressability constitutes the core of Article III's

20   case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of

21   establishing its existence." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-104, 118

22   S.Ct. 1003 (1998).

23   Defendants note that many constitutional rights are personal and may not be vicariously asserted.

24   *See Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565 (1973); *Alderman v. United States*, 394

25   U.S. 165, 174, 89 S.Ct. 961 (1969).

26   Charlotte is Ms. Survive's mother and pursues claims individually and as guardian ad litem for

27   Ms. Survive.  Mr. Millet is Ms. Survive's son and pursues claims individually.  Defendants fault the

28   absence of facts of violation of Charlotte Survive's and Mr. Millet's particularized individual rights in

1   that the FAC merely alleges fabrication of the report and that Ms. Survine was an adult at the time of

2   the incident.  As such, defendants conclude that Charlotte Survine and Mr. Millet lack standing.

3        Plaintiffs offer nothing meaningful to substantiate Charlotte's and Mr. Millet's standing to pursue

4   civil rights claims.  The FAC and plaintiffs' opposition papers fail to identify and support violation of

5   Charlotte's and Mr. Millet's due process or equal protection rights due to the report.  Ms. Survine, not

6   Charlotte or Mr. Millet, was the alleged victim of the incident and in turn the report.  Moreover,

7   Charlotte's and Mr. Millet's standing is further eroded by the absence of the FAC's viable section 1983

8   and section 1985 claims.  In the absence of support for their standing, claims on behalf of Charlotte and

9   Mr. Millet are subject to dismissal.

10                    ***Monell* Liability**

11       Defendants contend that the FAC lacks facts for the City's *Monell* liability.  Plaintiffs claim that

12   the FAC demonstrates a "causal link between municipal policy or custom, and the alleged constitutional

13   violation."

14       A local government unit may not be held liable for the acts of its employees under a respondeat

15   superior theory.  *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

16   (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

17   275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989).  "Federal case law

18   has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

19   1983."  *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

20   Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

21   result of a 'policy or custom' of that state actor."  *African American Contractors*, 96 F.3d at 1215.

22       "[A] municipality cannot be held liable *solely* because it employs a tortfeasor."  *Monell*, 436 U.S.

23   at 691, 98 S.Ct. at 2018.  The local government unit "itself must cause the constitutional deprivation."

24   *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

25   (1993).  Because liability of a local governmental unit must rest on its actions, not the actions of its

26   employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

27   constitutional violation was the product of a policy or custom of the local governmental unit.  *City of

28   Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

U.S. 469, 478-480, 106 S.Ct. 1292 (1986).  To maintain a civil rights claim against a local government, a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal policymakers) and the requisite causation (the policy or custom as the "moving force" behind the constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

"In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  A local government entity may be liable under section 1983 "if its deliberate policy caused the constitutional violation alleged." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).  However, "[l]iability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1995), *cert. denied*, 520 U.S. 1117, 117 S.Ct. 1249 (1997).

A municipal policy or custom is established by showing: (1)"a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Ulrich v. City and County of San Francisco*, 308 F.3d 968, 984-985 (9th Cir. 2002) (internal quotation marks and citations omitted).

The FAC alleges:

> The City, the Department and the members of the City Council of the City ("Council") have pursued a policy and custom and practice of deliberate indifference to the rights of the black citizens and . . . have promoted, ratified and approved a continuing course of conduct, creating an atmosphere within which it is permissible and encouraged to act with indifference and with conscious disregard for the constitutionally-protected civil rights of the City's black citizens . . .

The FAC makes passing references to "the practice of indifference shown to black citizens" and "custom and practice of protecting white citizens from prosecution."

23

1    The FAC lacks a *Monell* claim against the City in the absence of facts to support a precise

2  custom, policy or practice.  The FAC merely alleges a practice to favor Caucasian drivers over African-

3  American traffic collision victims but bases such practice on Ms. Survine's sole incident.  There are no

4  allegations of duration, frequency and consistency of an unlawful custom, policy or practice.  There are

5  no supporting facts of "deliberate indifference to the rights of black citizens" based on a specific policy,

6  custom or practice.  The FAC alleges merely a conclusion and no facts to connect the City to an alleged

7  constitution deprivation.  This Court construes the absence of plaintiffs' meaningful opposition as their

8  concession as to an absence of a *Monell* claim against the City but nonetheless grants Ms. Survine and

9  Mr. Millet an attempt to amend a *Monell* claim against the City.

10                                              **Punitive Damages**

11    Defendants challenge the imposition of punitive damages against the City and FAC's prayer for

12  $10 million punitive damages against the City and $1 million against Officers Cottle and Cox.

13    Generally, punitive damages are not allowed against a municipality unless expressly authorized

14  by statute.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-260, 101 S.Ct. 2748 (1981)

15  ("Judicial disinclination to award punitive damages against a municipality has persisted to the present

16  day in the vast majority of jurisdictions.") A "municipality is immune from punitive damages under 42

17  U.S.C. § 1983." *Fact Concepts*, 453 U.S. at 271, 101 S.Ct. 2748.

18    Under California Government Code section 818, a California municipality is not subject to

19  punitive damages.  California Government Code section 818 provides: "Notwithstanding any other

20  provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code

21  or other damages imposed primarily for the sake of example and by way of punishing the defendant."

22  "California Government Code § 818 bars any award of punitive damages against a public entity."

23  *Westlands Water Dist. v. Amoco Chemical Co.*, 953 F.2d 1109, 1113 (9th Cir. 1991).

24    The City is not subject to punitive damages claims to warrant their dismissal against the City and

25  in turn striking the FAC's prayer for $10,000,000 punitive damages against the City.  The punitive

26  damages prayer against Officers Cottle and Cox is subject to striking under California Civil Code section

27  3295(e) ("No claim for exemplary damages shall state an amount or amounts.")

28                                         **CONCLUSION AND ORDER**

24

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice the FAC's (fourth) California Constitution Article I, Section 7 and (fifth) fraud claims in their entirety;

2.      DISMISSES with prejudice all claims on behalf of Charlotte individually, except that she may continue to proceed in this action only as guardian ad litem for Ms. Survine;

3.      DISMISSES without prejudice the FAC's section 1983 and 1985 claims for Ms. Survine and Mr. Millet only;

4.      DISMISSES with prejudice punitive damages claims against the City and PROHIBITS Ms. Survine and Mr. Millet to state a specific amount of punitive damages in an amended complaint;

5.      ORDERS Ms. Survine and Mr. Millet only, no later than January 30, 2013, to file and serve either: (a) a second amended complaint in compliance with this order and which is limited to section 1983 and 1985 claims; or (b) a statement that Ms. Survine and Mr. Millet elect not to pursue this action; and

6.      ORDERS defendants, no later than February 21, 2013, to file and serve a response to the second amended complaint if Ms. Survine and Mr. Millet elect to file one.

To reiterate, based on this order, only the FAC's section 1983 and 1985 claims for Ms. Survine and Mr. Millet are subject to an attempt to amend.

IT IS SO ORDERED.

Dated:   __January 8, 2013__          ____/s/  Lawrence J. O'Neill____
                                        UNITED STATES DISTRICT JUDGE