1

2

3

4

5

6

7

8

9

10                    **IN THE UNITED STATES DISTRICT COURT**

11                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

12

13

14   CHARLOTTE SURVINE, as Guardian          CASE NO. CV F 12-1453 LJO JLT
     ad Litem for ALISANDE CHERISE
15   SURVINE, et al.,                         **ORDER ON DEFENDANTS' F.R.Civ.P. 12**
                                              **MOTION TO DISMISS ACTION**
16                    Plaintiff,              (Doc. 18.)

17          vs.

18   OFFICER MICHAEL COTTLE, et al.,

19                    Defendants.
     _____/

20                         **INTRODUCTION**

21          Defendants Bakersfield police officers Michael Cottle ("Officer Cottle") and David Cox

22   ("Officer Cox") seek to dismiss as legally barred and insufficiently pled plaintiff Alisande Cherise

23   Survine ("Ms. Survine") and Sean Millet's ("Mr. Millet's") civil rights claims arising from alleged

24   fabrication of a traffic collision report.  To oppose dismissal, Ms. Survine and Mr. Millet (collectively

25   "plaintiffs") generally parrot the SAC's conclusory allegations and claim constitutional deprivations

26   based on their African-American race.  This Court considered Officer Cottle and Cox's F.R.Civ.P.

27   12(b)(6) motion to dismiss on the record and VACATES the April 8, 2013 hearing, pursuant to Local

28   Rule 230(g).  For the reasons discussed below, this Court DISMISSES this action.

                                              1

1

## BACKGROUND[1]

2

### Summary

3      On November 17, 2003, Ms. Survine was struck by a vehicle driven by Sarah Sanders

4  ("driver"),who is Caucasian, as Ms. Survine began to cross a Bakersfield street intersection ("incident").

5  Officers Cottle and Cox investigated the incident and prepared a traffic collision report ("report"), which

6  plaintiffs claim was fabricated to exonerate the Caucasian driver pursuant to a conspiracy among

7  Officers Cottle and Cox and Doe Supervising Officer (collectively "defendants") and others to deny

8  plaintiffs' civil rights.  Defendants seek to dismiss plaintiffs' civil rights claims as legally barred and

9  insufficiently pled.

10

### The Incident And Report

11      As a result of the incident, Ms. Survine suffered severe injuries and was rendered comatose up

12  to the September 5, 2012 filing of this action.  The report stated that Ms. Survine ran directly in front

13  of the driver's vehicle and that the driver braked and attempted to avoid hitting Ms. Survine.  The driver

14  testified under oath differently and that the driver first saw Ms. Survine almost simultaneously with

15  impact of Ms. Survine and did not remove her foot from the accelerator to decelerate.  Physical evidence

16  at the incident scene, including skid marks, denies statements which the report attributes to the driver

17  and makes the version of events concocted by defendants "an impossibility."  A witness statement places

18  Ms. Survine on the sidewalk before she attempted to cross the street to render impossible that Ms.

19  Survine stood on a raised cement divider, which the report attributes the driver to have noticed.

20  / / /

21

### Plaintiffs' Claims

22      The SAC alleges that the report portrays the driver as driving safely and taking precautions and

23  that defendants "conspired to fabricate the Report to cast Ms. Survine as having been the sole and only

24  cause of her harm."  The SAC further alleges that defendants conspired to ensure the report exonerated

25  the driver "solely because Ms. Survine is black and the Driver is white."  The SAC accuses defendants

26

27      [1]      The factual recitation is derived generally from plaintiffs' Second Amended Complaint for Damages for

Deprivation of Constitutional Rights under Color of Law ("SAC"), the target of defense challenges, and other matters which

28  this Court may consider.  Mr. Millet is Ms. Survine's son and pursues SAC claims jointly with Ms. Survine.

1   of violating plaintiffs' equal protection and due process rights to diminish and devalue "claims that

2   Plaintiffs would pursue against the Driver," to obstruct justice, and to "prevent any prosecution of the

3   Driver."

4          The SAC alleges a (first) 42 U.S.C. § 1983 ("section 1983") claim that because of plaintiffs' race,

5   defendants violated plaintiffs' equal protection and due process rights in that plaintiffs:

6          1.      Were "deprived of equal treatment by law enforcement" as defendants favored the

7                  Caucasian driver;

8          2.      Were "arbitrarily disfavored and not treated fairly by Defendants' in their investigation

9                  and reporting of the Incident";

10         3.      Were deprived of access to justice "whereby the Driver's conduct would have been

11                 investigated and her degree of culpability determined";

12         4.      Were "deprived of a reporting of the true facts and circumstances upon which they could

13                 pursue civil actions" against the driver; and

14         5.      Were "deprived of their rights to secure a fair and equitable measure of damages in a

15                 civil action against the Driver."

16   The SAC also alleges:

17         1.      A (second) section 1983 conspiracy claim that defendants are liable for conspiracy to

18                 violate plaintiffs' equal protection and due process rights in that defendants mishandled

19                 "their investigation of the Incident" and presented "fabricated and false information for

20                 the Report" because of plaintiffs' race; and

21         2.      A (third) 42 U.S.C. § 1985(2) ("section 1985(2)") conspiracy claim that defendants

22                 conspired "to impede, hinder, obstruct and defeat the due process of justice in connection

23                 with the facts and circumstances of the Incident."

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

26         Defendants seek F.R.Civ.P. 12(b)(6) dismissal of the SAC's claims in that the SAC "is fatally

27   flawed and cannot be resurrected by further amendment" given the SAC's absence of sufficient facts to

28   support claims and Mr. Millet's standing to pursue claims.  Plaintiffs respond theat defendants'

1    "wrongful conduct caused Plaintiffs to suffer violations of their constitutionally grounded rights."

2           "When a federal court reviews the sufficiency of a complaint, before the reception of any

3    evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether

4    a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the

5    claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development*

6    *Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either

7    a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

8    theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of*

9    *Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).  A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency

10   of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

11          In addressing dismissal, a court must:  (1) construe the complaint in the light most favorable to

12   the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff

13   can prove any set of facts to support a claim that would merit relief.  *Cahill v. Liberty Mut. Ins. Co.,* 80

14   F.3d 336, 337-338 (9th Cir. 1996).  Nonetheless, a court is not required "to accept as true allegations that

15   are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead*

16   *Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).  A court "need not

17   assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v.*

18   *Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and must  not "assume that the [plaintiff] can prove

19   facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been

20   alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*,

21   459 U.S. 519, 526, 103 S.Ct. 897 (1983).  A court need not permit an attempt to amend if "it is clear that

22   the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney,*

23   *Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

24          A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires

25   more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

26   do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations

27   omitted).  Moreover, a court "will dismiss any claim that, even when construed in the light most

28   favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan*

*Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).  In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937,1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

With these standards in mind, this Court turns to defendants' challenges to the SAC.

**Mr. Millet's Standing**

Defendants challenge Mr. Millet's standing to pursue the SAC's claims given his mere presence

1  at the incident.

2      In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 2136, 2137 (1992),

3  the U.S. Supreme Court explained:

4      [T]he irreducible constitutional minimum of standing contains three elements. First, the
       plaintiff must have suffered an 'injury in fact'– an invasion of a legally protected interest

5      that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or
       hypothetical. Second, there must be a causal connection between the injury and the

6      conduct complained of. . . . Third, it must be likely, as opposed to merely speculative,
       that the injury will be redressed by a favorable decision." (footnote, citations, and

7      internal quotation marks omitted).

8  "This triad of injury in fact, causation, and redressability constitutes the core of Article III's

9  case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of

10 establishing its existence." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103-104, 118

11 S.Ct. 1003 (1998); *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130 ("The party invoking federal jurisdiction

12 bears the burden of establishing these [standing] elements").

13     Defendants note that many constitutional rights are personal and may not be vicariously asserted.

14 *See Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565 (1973); *Alderman v. United States*, 394

15 U.S. 165, 174, 89 S.Ct. 961 (1969).  In addition, defendants point to the absence of a child's loss of

16 consortium claim. *See Borer v. American Airlines, Inc.*, 19 Cal.3d 441, 445, 138 Cal.Rptr. 302 (1977)

17 ("a child cannot maintain a cause of action for loss of parental consortium").  As such, defendants

18 conclude that the "complaint remains void of any factual allegation that would give Mr. Millet standing

19 to bring this suit or to allege violation of his due process and equal protection rights as a result of the

20 report."

21     Plaintiffs respond that Mr. Millet was at the scene of the incident and encountered Officers Cottle

22 and Cox, whose "wrongful conduct was based in their decision to act arbitrarily to disfavor Mr. Millet."

23     Plaintiffs offer nothing meaningful to substantiate Mr. Millet's standing to pursue civil rights

24 claims.  The SAC and plaintiffs' opposition papers fail to identify and support violation of Mr. Millet's

25 due process or equal protection rights due to the report or Mr. Millet's presence at the incident.  Ms.

26 Survine, not Mr. Millet, was the alleged victim of the incident and in turn the report.  Moreover, Mr.

27 Millet's standing is further eroded by the absence of the SAC's viable section 1983 and section 1985

28 claims, as discussed below, and the absence of a parental consortium claim available to Mr. Millet.

1   Allegations that Mr. Millet was merely present at the scene of the incident are insufficient.  In the

2   absence of support for his standing, claims on behalf of Mr. Millet are subject to dismissal.

3                                   **Absence Of A False Report Claim**

4          Defendants contend that the SAC fails to support a section 1983 claim in the absence of an injury

5   or constitutional violation from an alleged false police report in that plaintiff pursued civil claims against

6   the driver.

7          The First Circuit Court of Appeals has explained the absence of a section 1983 claim arising

8   from a false police report by itself:

9          For purposes of recovering damages at least, we do not see how the existence of a false
           police report, sitting in a drawer in a police station, by itself deprives a person of a right
10         secured by the Constitution and laws. If action is subsequently taken on the basis of that
           report, or if the report is disseminated in some manner, plaintiff's constitutional rights
11         may well then be violated . . . and in that event a section 1983 action may lie. The focus,
           however, ordinarily should be on the consequences, if any, not on the mere existence of
12         the report. We therefore agree with the district court that the mere filing of the false
           police reports, by themselves and without more, did not create a right of action in
13         damages under 42 U.S.C. s 1983.

14   *Landrigan v. City of Warwick*, 628 F.2d 736, 744-745 (1ˢᵗ Cir. 1980) (internal citation omitted); *see*

15   *Williams v. Savage*, 538 F.Supp.2d 34, 42 (D. D.C. 2008) (no injury from an inaccurate police report

16   arises "if a plaintiff can still meaningfully press his underlying claims because the plaintiff is not

17   presently denied an opportunity to meaningfully litigate").

18         Defendants note that the report did not thwart plaintiffs' ability to pursue civil claims against the

19   driver, especially given the SAC's allegations that they did so.  Defendants further question admissibility

20   of the report as hearsay.  Defendants point to no grounds to support a section 1983 claim based on "a

21   false police report or the failure to investigate further particularly when the plaintiff may file a civil suit."

22   Defendants conclude there is no theory to support plaintiffs' constitutional deprivation from "the

23   purportedly false police report and inadequate investigation."

24         The SAC lacks facts to support that the police report thwarted or diminished plaintiffs' civil

25   claims against the driver.  The SAC alleges that plaintiffs pursued civil claims against the driver, and

26   plaintiffs offer nothing to question their ability to pursue civil claims against the driver.  Plaintiffs'

27   disagreement with the report and disappointment with the outcome of the civil claims fails to

28   substantiate section 1983 claims arising from the report.  Plaintiffs claims arising from preparation of

1  a false report fail.

2  <u>**Adequacy Of Pleading Section 1983 And 1985 Claims**</u>

3  Defendants argue that even if a false report claim was viable, the SAC lacks sufficient facts to

4  support section 1983 and 1985(2) claims.

5  ***Section 1983 Requirements***

6  "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

7  acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

8  claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

9  States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9ᵗʰ Cir. 1988).

10  "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

11  vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

12  811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

13  Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

14  of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.

15  247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

16  (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of

17  a right 'secured by the Constitution and laws.'" *Baker,* 443 U.S. at 140, 99 S.Ct. 2689 (1979).  Stated

18  differently, the first step in a section 1983 claim is to identify the specific constitutional right allegedly

19  infringed.  *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 813 (1994).  "Section 1983 imposes

20  liability for violations of rights protected by the Constitution, not for violations of duties of care arising

21  out of tort law."  *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

22  Defendants attack the SAC's (first) section 1983 claim's failure to specify with facts allegedly

23  violated rights given the claim's reliance on the "entirety of the Bill of Rights" and vague and conclusory

24  allegations.  Defendants argue that the SAC lacks facts to support legal conclusions that defendants are

25  subject to section 1983 liability in that no facts "rise to the level necessary for a § 1983 claim."

26  Plaintiffs note that the "gist of the wrongdoing amounts to these defendants constructing an

27  intentionally false and fictitious Incident Report, with a specific intent to absolve"the Caucasian driver

28  "and cast all responsibility and fault" on African-American Ms. Survine.

8

1    "Under Rule 8(a), a complaint must do more than name laws that may have been violated by the

2    defendant; it must also allege facts regarding what conduct violated those laws." *Anderson v. U.S. Dept.*

3    *of Housing and Urban Development*, 554 F.3d 525, 528 (5th Cir. 2008).

4    As to violation of protected rights, the SAC alleges that because Ms. Survine is African-

5    American and the driver Caucasian, defendants fabricated the report as the official record of the incident

6    to violate plaintiffs' "rights to equal protection," "rights to due process," and "applicable ordinances,

7    laws and statutes relating to filing false and fraudulent reports."   The SAC further alleges that the

8    fabricated report "diminished any claims that Plaintiffs would pursue against the Driver" and "was

9    unlawful and an obstruction of justice" to thwart investigation of the incident.

10    The SAC makes broad allegations to support the (first) section 1983 claim.  The section 1983

11    claim merely repeats legal conclusions of deprivation of rights.  To summarize, the SAC alleges that

12    based on Ms. Survine's and the driver's races, defendants falsified the report to thwart plaintiffs' civil

13    claims against the driver and to violate equal protection and due process rights.  Despite its labels, the

14    SAC fails to identify specific constitutional rights allegedly infringed.  The SAC fails to connect alleged

15    report fabrication to violation of protected rights.  The SAC is short on necessary details to support the

16    (first) section 1983 claim, which is subject to dismissal.

17                                    ***Section 1983 Conspiracy***

18    Defendants challenge that the SAC's (second) section 1983 conspiracy claim as lacking sufficient

19    facts.

20    A section 1983 civil rights conspiracy is a combination of two or more persons acting in concert

21    to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which

22    is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act

23    that results in damages. *Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir. 1988). "Section 1983 is based upon

24    the fourteenth amendment and thus concerns deprivations of rights that are accomplished under the color

25    of state law." *Gillespie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980).  "A mere allegation of conspiracy

26    without factual specificity is insufficient." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621,

27    626 (9th Cir. 1988).  However, to be liable, "each participant in the conspiracy need not know the exact

28    details of the plan, but each participant must at least share the common objective of the conspiracy."

1   *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir.1989).

2   ***Section 1985 Conspiracy***

3   Defendants further attack the SAC's (third) section 1985(2) conspiracy claim as conclusory.

4   Section 1985(2) identifies a conspiracy to interfere with civil rights:

5   . . . if two or more persons conspire for the purpose of impeding, hindering, obstructing,
   or defeating, in any manner, the due course of justice in any State or Territory, with intent
6   to deny to any citizen the **equal protection of the laws**, or to injure him or his property
   for lawfully enforcing, or attempting to enforce, the right of any person, or class of
7   persons, to the **equal protection of the laws**;  (Bold added.)

8   The "equal protection" language of the second clause (state courts) of section 1985(2) requires

9   "an allegation of class-based animus for the statement of a claim under that clause." *Portman v. County*

10   *of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993) (quoting *Bretz v. Kelman*, 773 F.2d 1026, 1029 (9th

11   Cir.1985)).  "Congress intended the act [section 1985(2)] to apply only in cases where there was racial

12   or class-based animus."  *Kimble v. D. J. McDuffy, Inc.,* 648 F.2d 340, 347 (5th Cir.), *cert. denied*, 454

13   U.S. 1110, 102 S.Ct. 687 (1981); *see Lopez v. Arrowhead Ranches*, 523 F.2d 924, 928 (9th Cir. 1975)

14   (limitation to "cases in which a deprivation of equal rights is actionable to those where the injury is class

15   motivated").

16   A section 1985 claim "must allege facts to support the allegation that defendants conspired

17   together. A mere allegation of conspiracy without factual specificity is insufficient." *Karim-Panahi*, 839

18   F.2d at 626.  "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state

19   specific facts to support the existence of the claimed conspiracy.'" *Olsen v. Idaho State Bd. of Medicine*,

20   363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)).

21   To support a conspiracy, the SAC alleges:

22   1.   Defendants "acting in concert and with indifference toward Ms. Survine and Mr. Millet,

23        because they are black citizens, painstakingly conspired to construct a fictitious and

24        made-up version of the Incident, perjuring themselves by filing an intentionally

25        fabricated, false and untruthful version of the Report";

26   2.   "Defendants conspired together to ensure that the Report was carefully crafted and

27        constructed, with direct and specific intent to absolve and exonerate the Driver and to

28        cause all blame and causation for the Incident totally and one hundred percent on Ms.

10

1    Survine, solely because Ms. Survine is black and the Driver is white";

2    3.    Defendants, "all acting in concert and as co-conspirators, acted with certainty and

3    specific intent to shield the Driver from investigation, including sobriety tests, and likely

4    prosecution and punishment for the Driver's conduct in connection with the Incident";

5    4.    Defendants, "all acting in concert and as co-conspirators, by filing the Report, acted with

6    certainty and specific intent to hide, conceal and cover-up the true facts involved in the

7    Incident"; and

8    5.    Defendants "agreed to mishandle their investigation of the Incident and to present

9    fabricated and false information for the Report."

10    Defendants fault the SAC's absence of facts of a conspiracy or racial bias given that the SAC's

11   mere reference of plaintiffs' and the driver's different races and "purported favoring of Caucasian

12   drivers."   Defendants note the SAC's absence of allegations as to "the alleged conspiracy's timing,

13   duration, or object other than facts to the effect that Officers Cottle and Cox prepared the report.

14   Defendants point to the SAC's failure "to identify concerted activity to result in violation of a protected

15   right" along with the absence of facts "to support a common design or meeting of minds for an unlawful

16   arrangement."

17    Plaintiffs offer that the "acts of conspiracy are clearly set out" given "that Cottle and Cox acted

18   in sync and and [sic] in lock step, with the assistance and support of Doe Supervisor."

19    Despite their repetition, the gist of the SAC's conspiracy claims is that defendants falsified the

20   report to protect the Caucasian driver and to harm Ms. Survine, who is African-American.  The SAC's

21   conclusory allegations fail to identify concerted activity to result in violation of a protected right.  The

22   SAC lacks sufficient specific facts of a conspiracy.  It merely uses labels of "conspiracy" and "acted in

23   concert" with no supporting facts.  Plaintiffs' deficient premise is that since the SAC alleges differences

24   between the report and the driver's sworn testimony, there is a conspiracy given the different races of

25   Ms. Survine and the driver.

26    The SAC lacks facts to support a common design or meeting of minds for an unlawful

27   arrangement.  There are no particularized allegations as to the purported conspiracy's timing, duration,

28   or object other than defendants' preparation of the report.  The SAC relies on merely identifying

11

conspirators as Officers Cottle and Cox, Doe Supervisor and Doe defendants.  Such allegations are insufficient to support the alleged conspiracy.  The SAC offers no facts (as compared to conclusions) that the conspirators were motivated by a class-based discriminatory animus in that the SAC relies solely on the races of Ms. Survine and the driver and purported favoring of Caucasian drivers.  The section 1983 and 1985(2) conspiracy claims fail in the absence of necessary supporting facts, and plaintiffs offer nothing to invigorate conspiracy claims.

### Use Of Doe Defendants

Defendants further challenge the SAC's reliance on Doe defendant allegations, in particular, "Doe Supervising Officer."  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("the use of 'John Doe' to identify a defendant is not favored").  Defendants fault the SAC's failure to comply with California Code of Civil Procedure section 474, which provides in part: "When the plaintiff is ignorant of a defendant, he must state that fact in the complaint . . ."  Defendants criticize the SAC's failure to explain inability to identify the Doe Supervising Officer and its mere allegation that plaintiffs "are ignorant of Doe Supervisor's ID No. within the Department."  Defendants point to the failure to link a Doe defendant upon anyone to accomplish service of process.   Defendants further question the delay to identify Doe defendants since the report was available in December 2003.

Defendants' unopposed points as to Doe defendants further support dismissal of the SAC's claims.

### CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.    DISMISSES with prejudice this entire action and all claims;

2.    DIRECTS the clerk to enter judgment in favor of defendants Officers Michael Cottle and David Cox and against plaintiffs and to close this action;

3.    VACATES the May 16, 2013 scheduling conference.

IT IS SO ORDERED.

**Dated:    April 1, 2013              /s/  Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE